UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Allen Binstock,  
Regional Director of Region 8,  
    for and on behalf of the  
National Labor Relations Board,

                       Applicant,

      v.

Midwest Terminals of Toledo  
International, Inc.,

                       Respondent.

Case No. 3:17-mc-41




MEMORANDUM OPINION
AND ORDER


## I.    INTRODUCTION AND BACKGROUND

Allen Binstock, the Regional Director of Region 8 of the National Labor Relations Board ("NLRB"), has filed an application for an order compelling Respondent Midwest Terminals of Toledo International, Inc., to comply with four subpoenas. The NLRB issued the subpoenas – two of which seek the production of documents while the other two seek testimony from Midwest's Human Resource Manager, Christopher Blakely – in connection with its investigation of three unfair-labor-practices charges. (Doc. No. 1 at 2; Doc. No. 1-19 at 5-7). These charges were filed by the International Longshoremen's Association, Local 1982, and Raymond Sims, an individual longshoreman, and allege Midwest's hiring practices in 2015 and 2016 violated certain prohibitions

of unfair labor practices under the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (Doc. No. 1 at 2-3).

Midwest has filed a memorandum in opposition to the NLRB's application. (Doc. No. 3). The NLRB, after receiving leave, filed a memorandum in reply. (Doc. No. 9). For the reasons stated below, the NLRB's application for an order enforcing the subpoenas, (Doc. No. 1), is granted.

## II. STANDARD

The NLRB may issue a subpoena to a party "being investigated or proceeded against" requiring the party to produce documents or individuals for examination where the document or individual sought "relates to any matter under investigation or in question." 29 U.S.C. § 161(1). If the party fails to produce the requested documents or individuals, the NLRB may seek a court order requiring the party to comply with the subpoena. 29 U.S.C. § 161(2).

A district court must determine whether the NLRB has jurisdiction to investigate the matter in question, whether "the evidence subpoenaed is related to that matter, and is described with sufficient particularity," and whether the "likely relevance of the requested material" sufficiently outweighs the burden to the respondent of producing the subpoenaed material or testimony. *Nat'l Labor Relations Bd. v. Canon Solutions Am., Inc.*, No. 3:15-mc-12, 2016 WL 704935, at *2 (S.D. Ohio, Feb. 23, 2016) (quoting *NLRB v. ITT Telecomms.*, 415 F.2d 768, 769 (6th Cir. 1969), and *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47 (6th Cir. 1994)).

## III. ANALYSIS

The NLRB asserts the information it seeks is relevant to both unfair-labor-practices charges because those charges accuse Midwest of engaging in "bad faith bargaining" and of discriminating against employees "by disparately applying its pre-hire procedures for casual employees . . . and certain named employees . . . ." (Doc. No. 1-19 at 16). The NLRB has made a sufficient showing

under the "extremely limited" standard of review permitted under § 161 that its investigation concerns matters within its jurisdiction and that the information sought "may be relevant to the purpose" of its investigation. *N.L.R.B. v. Greif Bros., Inc.*, No. 2:11-cv-112, 2011 WL 2637078, at *2 (S.D. Ohio, May 26, 2011) (quoting *N.L.R.B. v. Frederick Cowan and Co., Inc.*, 522 F.2d 26, 28 (2nd Cir. 1975), and *United States v. Powell*, 379 U.S. 48, 57-58 (1964)).

While Midwest asserts the subpoenas seek information that is not relevant, its arguments center on its contention that it did nothing wrong. (*See, e.g.,* Doc. No. 3 at 14, 16-17). The NLRB's "appraisal of relevancy must be accepted so long as it is not obviously wrong." *Canon Solutions*, 2016 WL 704935, at *2 (citations omitted). I may not consider the relative propriety or impropriety of Midwest's conduct while reviewing the NLRB's relevancy arguments.

Midwest also argues the subpoenas are unduly burdensome because they request duplicative information and excessive records. It is true the NLRB is not entitled to subpoena information it already possesses. *Greif Bros.*, 2011 WL 2637078, at *2. The NLRB does not dispute this point, however, and therefore the inclusion of requests for duplicative information does not make the subpoenas unduly burdensome. (Doc. No. 9 at 3 ("Regarding its production claim, the [NLRB] has been very clear that [Midwest] need not provide any document that it has previously provided.")).

In responding to the subpoenas, it is sufficient that Midwest identify, in its response, the requested information which it previously provided. I hasten to clarify that requests for "nearly identical" documents are not the same as requests for duplicative information. (Doc. No. 3 at 18). If Midwest produced the requested documents previously, it need not do so again. Midwest, however, may not avoid the subpoena by claiming it previously produced documents that, for instance, were functionally equivalent or substantially the same.

Midwest's claim that requiring it to "search for, copy[,] and produce 163 days of gate records and 73 days of shape-up meeting [records] is unreasonable, oppressive[,] and unduly burdensome" is

3

much less persuasive. (Doc. No. 3 at 4). Midwest does not claim it lacks access to these records, or that it would be required to reconstruct them. *Cf. Ford Motor Credit Co.*, 26 F.3d at 47. As the Sixth Circuit has made clear, context is important in determining whether an individual was treated differently than other individuals and for what reason. *Id.* at 47-48. Midwest's attempt to narrow the scope of the subpoenas to "the specific dates the aforementioned individuals were supposedly denied entrance," (Doc. No. 3 at 4), is inconsistent with a court's duty to broadly interpret the relevance of the requested information. *Canon Solutions*, 2016 WL 704935, at *2. Midwest fails to establish the subpoenas are unduly burdensome.

Midwest makes a few additional arguments against enforcement. First, Midwest argues the NLRB improperly is disregarding its internal policies and procedures by attempting to use its subpoena power to conduct "pretrial discovery." (*See, e.g.,* Doc. No. 3 at 4). Midwest does not explain why the information the NLRB seeks through the subpoenas constitutes "pretrial discovery" that the NLRB Casehandling Manual forbids, (*see* Doc. No. 3-6 at 21), rather than "evidence" that Congress expressly authorizes the NLRB to gather. *See* 29 U.S.C. § 161(1).

The cases cited in the Casehandling Manual offer some insight into this apparent omission. Those cases permit the NLRB to "formulate its own rules as to when discovery is available to a party," *N.L.R.B. v. Valley Mold Co., Inc.*, 530 F.2d 693, 695 (6th Cir. 1976) (emphasis added), and to refuse to "disclose, prior to its hearing on an unfair labor practice complaint, statements of witnesses whom the Board intends to call at the hearing." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 216 (1978); *see also Pepsi-Cola Bottling Co. of Fayetteville, Inc.*, 315 NLRB 882, 883 (NLRB panel concluded employer did not commit an unfair labor practice when it refused to respond to union's request for information regarding termination of two employees because the information related to pending charges before the NLRB and therefore was protected by the no-pretrial-discovery policy).

4

The difference, then, is clear. "[A]n administrative agency charged with seeing that the laws are enforced . . . has a power of inquisition, if one chooses to call it that . . . . When investigative and accusatory duties are delegated by statute to an administrative body, it . . .may take steps to inform itself as to whether there is probable violation of the law." *United States v. Morton Salt Co.*, 338 U.S. 632, 642-43 (1950). The NLRB has clear statutory authority to investigate claims of unfair labor practices, and the policy the NLRB has adopted concerning what might be termed pretrial discovery limits the information the NLRB can be forced to provide to other entities or individuals, not the information the NLRB itself may collect. The latter limitation, of course, is one determined by the courts. *Ford Motor Credit Co.*, 26 F.3d at 47 (A court "*may not enforce* an administrative subpoena unless the request seeks relevant material and is not unduly burdensome." (emphasis in original)).

Finally, Midwest argues the subpoenas are improper because the NLRB is conducting "a seemingly unending . . . fishing expedition" and merely seeks to "harass" Midwest. (Doc. No. 3 at 9); *see also* (Doc. No. 3 at 14, 17-19, 25). While it perhaps is understandable Midwest has tired of the NLRB's investigation and the underlying disputes with Local 1982, Midwest offers no evidence to show the NLRB is attempting to "harass" Midwest rather than to perform its Congressionally-delegated function.

## IV. CONCLUSION

For the reasons stated above, the application of the NLRB for an order enforcing the subpoenas, (Doc. No. 1), is granted.

So Ordered.

                                                                                       s/ Jeffrey J. Helmick
                                                                                       United States District Judge